UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Pherebie O.Wall and Robert E. Wall | ) | Civil Action No. 4:04-754-RBH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| State of South Carolina; County of Florence; | ) | REPORT AND |
| In the Interest and Estate of Shirley Vause, | ) | RECOMMENDATION |
| Magistrate, in her official and individual | ) | |
| capacity; Tommy Spells, Constable, in his | ) | |
| official and individual capacity; Alvin | ) | |
| Powell, Deputy of the Florence County | ) | |
| Sheriff's Department, in his official and | ) | |
| individual capacity, | ) | |
| Defendants. | ) | |
| | ) | |

Defendants removed the matter to this court on March 11, 2004, from the Court of Common

Pleas, Florence, South Carolina. The initial scheduling order was filed in this case on March 26,

2004. A Consent Amended Scheduling Order was entered February 23, 2005,(Document # 39)[1]

setting deadlines as follows: discovery by July 15, 2005; dispositive motions by September 15, 2005;

trial by December 15, 2005. Defendants (all) filed a motion on September 13, 2005, (Document #

59) to extend time by twenty (20) days to file dispositive motions. Defendant In the Interest and

Estate of Shirley Vause Magistrate, in her official and individual capacity (Vause) filed its motion

for summary judgment on October 3, 2005 (Document # 63). Plaintiff filed a response to Vause's

motion for summary judgment on February 6, 2006, to which Vause filed a reply on February 14,

---

[1] An amended scheduling order was filed January 5, 2006 (Document # 90) resetting the deadlines for mediation, pretrial briefs and trial.

2006.

The Remaining Defendants filed a motion on October 3, 2005 (Document # 64) to extend time by 10 days (to October 13, 2005), a motion on October 13, 2005 (Document # 66) to extend time by 10 days (to October 23, 2005), and  filed their motion for summary judgment on November 14, 2005 (Document # 73).

Plaintiff filed a motion to enlarge time to respond to Vause's motion for summary judgment on November 3, 2005 (Document # 72), on November 23, 2005 (Document # 80), and  on December 14, 2005 (Document # 86).

Plaintiff filed a motion to enlarge time to respond to Remaining Defendants' motion for summary judgment on December 14, 2005 (Document # 87) and on January 17, 2006 (Document #91 ) to extend the time (10 days past November 14, 2005).[2]  Plaintiff has not filed a response to Remaining Defendants' motion for summary judgment.

Plaintiffs are proceeding *pro se*.  A *pro se* litigant's pleadings are accorded a liberal construction.  Hughes v. Rowe, 449 U.S. 5, 66 L.Ed. 163, 101 S.Ct. 173 (1980); Haines v. Kerner, 404 U.S. 519, 30 L.Ed.2d 652, 97 S.Ct. 594 (1972); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978).  *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys.  Hughes v. Rowe, 449 U.S. 5, 66 L.Ed.2d 163, 101 S.Ct. 173 (1980)(per curiam).  The mandated liberal construction means only that if the court can reasonably read the pleadings to state a claim on which plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999).  A court may not construct a plaintiff's legal

---

[2]  Plaintiff filed a motion to amend the scheduling order on February 10, 2006 (Document # 98) which does not request an extension to file or respond to dispositive motions.

arguments for him. <u>Small v. Endicott</u>, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir. 1985), <u>cert. denied</u>, 475 U.S. 1088 (1986).

Because the plaintiffs are proceeding *pro se*, they were advised on or about October 5, 2005, and November 18, 2005, pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), that a failure to adequately respond[3] to the defendants' motions for summary judgment could result in dismissal of their case.

It is well established that under Rule 56, facts are viewed in the light most favorable to the non-moving party. In accordance with this directive, the facts set forth basically are as found in the affidavit submitted with plaintiffs' memorandum in opposition to summary judgment filed February 6, 2006. It should be noted that plaintiffs also submitted a sworn statement upon filing their Verified Claim[4] (Verified Claim) with the South Carolina Budget and Control Board which differs, materially in some respects, from the affidavit submitted in opposition to Vause's motion for summary judgment. Some of the discrepancies are noted below.

### *Facts*

George and Melanie Kirby approached plaintiffs on February 26, 2002, about renting an

---

[3] The order states that failure "to respond adequately, the motion may be granted, thereby ending the case. Careful attention should be given to the requirements of Rule 56(e) concerning the necessity for affidavits . . . to be based upon personal knowledge, to contain facts admissible in evidence, and to be executed by a person who would be competent to testify as to matter contained in the affidavit if he or she was called to the witness stand . . . . submission of a brief . . . . will not be sufficient alone to withstand a properly supported motion for summary judgment."

[4] <u>See</u> attachment to Document # 41. A need to determine which version of plaintiff's testimony should be believed does not create an issue of fact. <u>Waste Management Holdings, Inc. v. Gilmore</u>, 252 F.3d 316, 341 (4th Cir. 2001).

apartment located behind plaintiffs' residence.  The Kirbys told plaintiffs that their home had been destroyed by fire, they had just been in an automobile accident and they needed a place to stay.  According to the Walls, they agreed to accept a washer and dryer as collateral for rent and damage deposit until the Kirbys could pay the amounts due.[5]  The washer and dryer were placed on the rear deck of plaintiffs' residence.  The next morning Mrs. Wall noticed the names "Chad & Mel Sauls"[6] were stenciled on the back of the washer and dryer.[7]   Mrs. Wall then telephoned the Florence County Sheriff's office to ask if a washer and dryer had been reported stolen.  She was informed that no warrants were outstanding pertaining to the Kirbys and no record of stolen property had been reported consistent with the names stenciled on the back of the appliances.

Mrs. Wall returned to the apartment and knocked on the door again.  After a prolonged period, Melanie Kirby came to the door.  While the door was open, Mrs. Wall observed what she believed to be illegal drugs on the coffee table.  Mrs. Wall informed Mrs. Kirby that illegal drugs were not allowed on the property and informed her that as soon as Mr. Kirby returned from work they should vacate the apartment.

Mrs. Wall returned to her residence and the telephone rang.  The call was from a law enforcement officer[8] asking about her previous inquiry concerning the appliances and the Kirbys.

---

[5]  The rental arrangement was also conditioned upon Mrs. Wall verifying satisfactory references.

[6]  In the Verified Claim, plaintiffs testified the names written with a black magic marker on the back of the appliances were "Chad & Mel Vause."  (Verified Claim ¶11).

[7]  Earl Vause states that the names stenciled on the back of the washer and dryer were "Earl and Melanie Vause."  (Earl Vause Aff. ¶ 10).

[8]  In their affidavit, the Walls indicate the law enforcement officer was someone who identified themselves as a constable from the magistrate's office.  Plaintiffs' Aff. ¶7.  However,

The officer informed Mrs. Wall that bench warrants were outstanding on George Kirby and Melanie Vause (Melanie). She informed the officer that Melanie was in the apartment and she understood George Kirby (George) was at work and would not be home until later in the afternoon. At about 5:45 p.m., Mr. Wall saw several unmarked cars in his yard and Melanie and George being arrested by law enforcement.

At approximately 7:30 p.m., Constable Spells arrived at the plaintiffs' residence. Constable Spells informed the Walls that Melanie and George were in custody. Mrs. Wall asked Constable Spells if the drugs had been removed and he advised that a warrant would be necessary. He also requested that plaintiff contact Magistrate Shirley Vause who "would take care of everything."[9]

Mrs. Wall called and spoke to Magistrate Vause. Magistrate Vause relayed that Melanie was her granddaughter, and was enraged, emotional and belligerent about Mrs. Wall reporting her granddaughter to the sheriff's department. Thereafter, Mrs. Wall ended the conversation because Magistrate Vause was acting hysterical.

On February 28, 2002, Mrs. Wall entered the apartment to view its condition. The apartment was a mess. She observed pill bottles and a green leafy substance believed to be marijuana on the coffee table. In the kitchen area, she observed a glass pipe or straw and brown colored rocks, believed to be crack cocaine, on a plate. Additionally, Mrs. Wall observed damage in several areas of the apartment. Mrs. Wall collected the illegal substances and placed them in a plastic basket

in the Verified Complaint, she indicates it was a "Police Office (sic) (unknown)." Verified Complaint ¶20.

[9] By affidavit, Earl Vause and James Kirby confirmed that Mrs. Wall later told them that Constable Spells told her that Magistrate Vause would take care of any damage to the apartment. (EarlVause Aff. ¶ 5; James Kirby Aff. ¶ 4).

-5-

which she left near the front door inside the apartment.   She also had someone clean the apartment.

At approximately 10:50 a.m., Magistrate Vause, her husband and George's father, James Kirby, arrived at the plaintiff's residence.  Mr. Vause and Mr. Kirby arrived in a pick-up truck to collect the personal belongings of Melanie and George.  Magistrate Vause arrived in her own, personal vehicle.  The personal belongings had been placed on the front stoop of the apartment.

Magistrate Vause was irate, belligerent and demanded to know why Mrs. Wall called the sheriff's department about Melanie.   Mrs. Wall explained why she called the sheriff's department and warned Magistrate Vause that if she could not remain civil and orderly, she would have to leave.  Magistrate Vause replied that she was a magistrate and could go wherever she wanted.  Mrs. Wall told Magistrate Vause that the personal belongings were located on the front stoop of the apartment and she wanted Magistrate Vause to collect the personal belongings and leave her property.  Mrs. Wall also informed Magistrate Vause that the apartment had been damaged for which she needed to be compensated.  Magistrate Vause refused to accept responsibility for any damage.  During this time, Mr. Vause and Mr. Kirby were loading the personal property into the back of the pick-up truck.  After they loaded the personal belongings, Mrs. Wall asked them to leave.  Because Magistrate Vause refused to leave, Mrs. Wall walked away to find her husband who was in another apartment.[10]  When walking out of the other apartment, Mrs. Wall encountered Mr. Vause who threw a box of trashcan liners at her, hitting her in the breast area and caused what Mrs. Wall describes as extreme pain.  Mrs. Wall looked in the direction of the entrance of the first apartment and saw Magistrate Vause exiting the apartment.  Magistrate Vause walked to her vehicle and appeared to be placing some items inside.  For the fourth time, Mrs. Wall asked them to leave.  Again, Magistrate Vause

---

[10]  Two apartments were located behind the Walls' residence.

refused to leave and told her she could do whatever she wanted and no one would do anything about it.

Mrs. Wall informed Mr. Kirby that his son's blood pressure medication was left in the apartment and she would retrieve it and bring it to him.  When she went to retrieve the medication she discovered that the illegal substances she put in the basket were missing.  She walked out and demanded to know who removed the basket.  According to her affidavit testimony, Mrs. Wall states she received no response, but Magistrate Vause then demanded possession of the washer and dryer. Mrs. Wall became enraged.  Mrs. Wall then accused Magistrate Vause of removing the illegal substances from the apartment.  According to the affidavit testimony, Magistrate Vause then told Mrs. Wall if she wanted everyone to leave, she would have to relinquish control of the washer and dryer.  Mrs. Wall replied that she would relinquish possession after the damage to the apartment was ascertained.  The affidavit submitted by the plaintiffs and their sworn statements contained in the Verified Complaint differ significantly on the issue of possession of the washer and dryer.  In their affidavit, they assert that they refused to allow the Vauses to remove the washer and dryer.  See Plaintiffs' Aff. ¶¶15, 18, 25, 26, 32, 33, 35, 37.  However, in their Verified Complaint, they state that they told the Vauses to take the property, including the washer and dryer, from the beginning.  See Verified Complaint ¶¶ 19, 39, 45, 55, 61, 71.

Magistrate Vause then dialed a number into her cellular phone and into the phone stated, "get your ass over here."[11]  Mrs. Wall went into her residence and dialed 9-1-1 and requested a deputy be sent to her residence because Magistrate Vause refused to leave.

---

[11] It appears that Magistrate Vause called Constable Spells and asked him to respond to the scene.  (    Spells Aff. ¶    ).

A few minutes later, Constable Spells arrived.  He first spoke to Magistrate Vause and then approached Mrs. Wall.  Mrs. Wall told Constable Spells everyone was trespassing and she wanted them to all leave.  Upon his request, Mrs. Walls then spoke to Constable Spells in private.  She informed him that the washer and dryer did not belong to Magistrate Vause and they had no right to take them.[12]  Constable Spells informed Mrs. Wall that Magistrate Vause would not leave without the washer and dryer, and that if she wanted everyone to leave, she would have to relinquish possession of the washer and dryer.

At approximately this time, two sheriff's deputies, Alvin Powell and another, arrived.  Magistrate Vause told the deputies that she was a magistrate and wanted the washer and dryer.  Mrs. Wall told Deputy Powell she had repeatedly told them to leave and wanted them removed from her property.

Both parties claimed right to possession of the washer and dryer.  Mr. Vause told Constable Spells and the sheriff's deputies that the washer and dryer belonged to him and that he needed them.  (Earl Vause Aff. ¶ 11).

Finally, after twenty minutes had passed since law enforcement officers arrived, Mrs. Wall, according to their affidavit,  succumbed to the "coercive and duressive pressures of the magistrate and officers" and relinquished control of the washer and dryer.  This is inconsistent with the Verified Claim.  One of the deputies assisted in loading the washer and dryer.

About twenty minutes after everyone left, Deputy Powell and the other deputy returned to complete an incident report because he was directed to do so by the sheriff.  Plaintiff submits a copy of the incident report which reads as follows:

---

[12]  Again, this in inconsistent with the sworn statements in the Verified Complaint.

On 020802, I, Deputy Alvin Powell, responded to the above address to a general complaint call. Upon arrival, this unit spoke with complainant, Pheebie Wall, who stated that she spoke with the subject, Shirley Vause, about some belongings of the subject's granddaughter's. The complainant stated that the belongings were in the complainant's rental property and that the subject was allowed to get the belongings on this date. The complainant stated that the subject came to her residence on 022802 at approximately 11:30 hrs and got into a verbal argument with the complainant. The complainant also stated that the subject accused her of telling police where the granddaughter was staying in reference to some warrants that the county had on the subject and her boyfriend. The complainant stated that the subject's granddaughter and her boyfriend were arrested on warrants on 022702 and she cleaned up the apartment and gathered up the belongings for the subject to come pick up. The complainant stated that after the argument, she asked the subject and the subject's husband to leave her property and the subject told her that she was not leaving, that she could go wherever she wanted to. The complainant then stated that she advised the subject not to go into the apartment[13] but, the subject went in the apartment after being told not to do so. The complainant stated that while cleaning up the apartment, she found some prescription oxycotin and a small amount of what appeared to be marijuana. The complainant stated that she had the drugs gathered up to give to the police and when she went back inside the basket that she had the drugs in was gone. The complainant stated that her husband told her that the property was put into the subject's vehicle. The complainant stated that the subject went into the apartment against her will and removed the oxycotin and the marijuana. The complainant also stated that the subject gathered up the granddaughter's belongings and left in her vehicle. The complainant stated that she did not feel this was the appropriate action for the subject to do on her property.

The parties bring their respective motions pursuant to Rule 56 of the Federal Rules of Civil Procedure. The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential

---

[13] Mr. Vause confirmed that Mrs. Wall directed them not to enter the apartment when Mr. Vause and Magistrate Vause requested to see the damage to the apartment. (Earl Vause Aff. ¶ 8).

element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial.  Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."  Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celetex Corp. v. Catrett, 477 U.S. 317, 324 (1986)(Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves").  To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings.  Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ...

-10-

affidavits, if any." Celetex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

**Vause's Motion for Summary Judgment**

Vause seeks summary judgment against each of plaintiffs' claims, including claims brought under 42 U.S.C. § 1983 for illegal search and seizure and violation of due process, as well as claims for trespass, abuse of process, false imprisonment, assault and battery and outrage.

**42 U.S.C. §1983 Claims**

Vause asserts that Magistrate Vause was not acting under color of law at all times relevant to this case.

§1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State and Territory or the District of Columbia, who subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

To establish a claim under §1983, plaintiff must show that defendant was deprived of a constitutional or federal right, and that defendant was clothed with state authority in so acting. Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155 (1978). In other words, state action requires *both* an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,"*and* that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." Amer. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50-51 (1999)(citing Lugar v. Edmondson Oil

<u>Co.</u>, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).  §1983 "proscribes the misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." <u>Hughes v. Halifax County School Board</u>, 855 F.2d 183, 186 (4th Cir. 1988)(internal citation omitted).

"The color of law requirement excludes from the reach of §1983 all 'merely private conduct, no matter how discriminatory or wrongful.'" <u>Rossignol v. Voorhaar</u>, 316 F.3d 516, 523 (4th Cir. 2003)(citing <u>Amer. Mfrs. Mut. Ins. Co. V. Sullivan</u>, 526 U.S. 40, 50 (1999)).  It "includes within its scope apparently private action which have a 'sufficient nexus' with the State to be 'fairly treated as that of the State itself.'" <u>Id</u>. (citing <u>Jackson v. Metro. Edison Co.</u>, 419 U.S. 345, 351 (1974)). There must be sufficient nexus between the challenged conduct and the state "that seemingly private behavior may be fairly treated as that of the State itself." <u>Id</u>. At 295.  There is no bright line test for this determination.  In making this determination, we must consider

> [t]he judicial obligation is not only to preserve an area of individual freedom by limiting the reach of federal law and avoid the imposition of responsibility on a State for conduct it could not control, but also to assure that constitutional standards are invoked when it can be said that the State is responsible for the specific conduct of which the plaintiff complains.

<u>Brentwood</u>, 531 U.S. 288, 295.

"There is no specific formula for defining state action under this standard." <u>Id</u>. (internal citation omitted).  "Rather, the question of what is fairly attributable to the State is a matter of normative judgment, and the criteria lack rigid simplicity." <u>Id</u>. (internal citation omitted).  The determination is made considering the totality of the circumstances. <u>Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n</u>, 531 U.S. 288, 295 n. 2 (2001); <u>Rossignol</u>, 316 F.3d at 523 n. 1. <u>Cf</u> <u>Parrilla-Burgos v. Hernandez-Rivera</u>, 108 F.3d 445 (1st Cir. 1997); <u>Monsky v. Moraghan</u>, 127 F.3d

243 (2nd Cir. 1997); Rossignol v. Voorhaar, 316 F.3d 516 (4th Cir. 2003); Hughes v. Halifax County School Board, 855 F.2d 183 (4th Cir. 1988).

Defendant's conduct is "generally attributable to the state when it occurs in the course of performing an actual or apparent duty of his office, or the conduct is such that the actor could not have behaved in that way but for the authority of his office." Maritez v. Colon, 54 F.3d 980, 986 (1st Cir. 1995). In addressing the "but for the authority" consideration, the First Circuit stated,

> However, that statement merely articulates the minimum threshold that must be met for action to be considered as occurring under color of state law and does not set forth the specific test to be applied in determining whether a challenged act was committed under color of state law.

Parrilla-Burgos, 108 F.3d at 449. Again, the totality of the circumstances drives the determination. Also, "it is not enough for an individual merely to purport to exercise official power in order to trigger §1983 liability, but rather the individual must actually be engaged in the abuse of official power granted by the government." Parrilla-Burgos v. Hernandez-Rivera, 108 F.3d 445, 449 (1st Cir. 1997).

An important consideration is "whether the defendant's purportedly private actions are linked to events which arose out of his official status." Rossignol, 316 F.3d at 254; Martinez, 54 F.3d at 986(whether police officer is acting under color of state law turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties). Also, "whether the actor, at the time in question, purposes to act in an official capacity or to exercise official responsibilities pursuant to state law." Martinez, 54 F.3d at 986.

With this framework in mind, the factual circumstances involved in this case will be addressed.

-13-

It is undisputed that this incident occurred at the Wall property and not in the courthouse or on state property. It is undisputed that Magistrate Vause was not dressed in a robe and was in her private vehicle. She arrived with her husband, Mr. Vause, and Mr. Kirby who were in Mr. Vause's truck. This matter involved circumstances involving Magistrate Vause's granddaughter, the personal belongings of Melanie and George which remained on the Walls' property. Mrs. Wall was asked to contact Magistrate Vause not in her official position but as the grandmother of Melanie Vause. While Magistrate Vause identified herself as a magistrate and made statements exaggerating her authority, this does not rise to the level of state action. Additionally, assuming Magistrate Vause removed the illegal substances from the apartment, she did this as the grandmother of Melanie, not as a judicial officer. Assuming she used her self-proclaimed ability to go and do as she pleased (purported authority), such action would not be engaging in abuse of actual, official authority.

Also, the parties do not properly address the first prong of the inquiry – the constitutional right and concomitant violation caused by the exercise of a right or privilege created by the state. Analysis of the "under color of law" requisite to a §1983 claim cannot be conducted in the abstract, but necessarily involves consideration of the specific right alleged to have been violated.

While the Fourth Amendment prohibits illegal search and seizure, plaintiffs fail to show that they possessed a constitutional right to protect them from Magistrate Vause entering the property and removing the illegal substances that belonged to Melanie and George. Plaintiffs fail to show how any constitutional right, whether under the 4th , 5th or 14th Amendments, were violated and how Vause abused her authority in doing so.

As set forth in note 3 above, Rule 56 does not allow a party to choose between the conflicting testimony upon which they wish to rely. According to their sworn testimony in their Verified Claim,

-14-

there was no dispute over the washer and dryer.  Therefore, plaintiffs' claim that Magistrate Vause violated a constitutional right when the washer and dryer were taken is without merit.[14]  Assuming, *arguendo*, there was a dispute over possession of the washer and dryer, clearly, at least up until the time that Constable Spells and the deputies arrived, Magistrate Vause was not acting under color of law.

The Walls and the Vauses became engaged in a heated dispute about the right to possession of the washer and dryer.  They were at an impasse and neither was willing to surrender their position.  Magistrate Vause called Constable Spells and Mrs. Wall called the sheriff's department.  After Spells and the deputies arrived, both parties informed them that they claimed right to possession of the washer and dryer.  The Walls claimed right of possession via an oral agreement with Melanie and George for security for damage deposit.  Mr. Vause claimed ownership and need of the washer and dryer.  During the time that Spells was there and the deputies, as well as the time proceeding this period, no one took possession of the washer and dryer while Mrs. Wall refused to relinquish control.  Within twenty minutes of the arrival of the sheriff's deputies,  Mrs. Wall agreed to allow the Vauses to take the washer and dryer.  While she may have felt pressured into doing so, there is not evidence of actions or conduct by Magistrate Vause that usurped her authority.[15]  In fact, there is no evidence

---

[14]  In fact, it is not clear from the record whether or not Magistrate Vause left before or at the time the washer and dryer were removed.

[15]  Had the Walls been arrested by Spells or the deputies at the direction of Magistrate Vause or even removed the washer and dryer upon the order of Magistrate Vause against the demands of the Walls, such circumstances may constitute conduct under color of law.  However, there is no evidence that Spells or the deputies did anything except tell the Walls that the Vauses were not leaving without the washer and dryer, and that Mrs. Walls eventually agreed to allow them to take it.

that Magistrate Vause directed Spells or the deputies to conduct themselves in any particular way.[16] The undisputed evidence is that the Vauses did not take the washer while Mrs. Wall refused to relinquish control, but only after she agreed to do so. This case presents a heated argument between two private parties over the right to possession over a washer and dryer and the intervention, at the request of the private parties, of law enforcement.

In their memorandum in opposition, plaintiffs assert, "[defendant] would lead this Court to believe that there is no protection secured by the Constitution which would be applicable to this form of infringement by an official of the government. And that Magistrate Vause cannot be fairly blamed for such conduct, or even lack thereof." (Plaintiffs' Memo. at p. 14). This is not the issue. It is not whether Magistrate Vause cannot be fairly blamed for her conduct. It is whether or not the state should be liable for money damages as a result of the conduct of Magistrate Vause. This, of course, is a significant distinction.

During this episode, Magistrate Vause may have committed conduct that was wrongful. She may have been trespassing or committing some other state tort. However, that is not the focus of our inquiry here. For the Constitution and §1983 to be triggered, Magistrate Vause's conduct must be fairly attributable to the state and violative of plaintiffs' constitutional rights. Based on the totality of the circumstances, Magistrate Vause was not acting under color of law during this incident, and plaintiffs' constitutional rights were not violated.

---

[16] Clearly, the evidence does not suggest that Magistrate Vause directed the deputies to remove the washer and dryer. Whether this would constitute state action is not before the court. Even if she had, this would be much less aggregious than, for example, had Magistrate Vause ordered Constable Spells or the deputies to arrest the Walls if the Walls challenged the Vauses' right to possession of the washer and dryer.

**Other Defendants' Motion for Summary Judgment**

Defendants State of South Carolina, County of Florence, Tommy Spells, and Alvin Powell filed their motion for summary judgment on November 14, 2005 (Document # 73). As set forth above, plaintiffs have not filed opposition to this motion. As also set forth above, plaintiffs were advised pursuant to Roseboro v. Garrison of the importance of opposing defendants' motion. Plaintiffs have not filed opposition to this motion. However, plaintiffs filed a motion for summary judgment and assert that Defendant Spells was negligent and in conspiracy with Magistrate Vause to illegally seize the illegal substance, and that he illegally trespassed on plaintiffs' property.

In their motion, plaintiffs assert that Spells conspired with Vause by alerting her to the presence of the illegal substance and by not seizing the illegal substance to allow Vause to retrieve it herself. Plaintiffs rely purely on their own self serving, unsubstantiated speculation which is insufficient to survive summary judgment. Williams v. Cerberonics, Inc., 871 F. 2d 452, 455 (4th Cir. 1989).

As to the trespass, this matter is an issue of state tort law.

In their motion for summary judgment, plaintiffs assert that Powell failed to arrest others that were trespassing upon their land, and assert that he was negligent in so doing. Powell asserts the defense of qualified immunity.

Qualified immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it. Once asserted, however, the court should carefully consider whether the person is entitled to qualified immunity. The Supreme Court in Harlowe v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct

-17-

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818; Doe v. Broderick, 225 F.3d 440, 446 (4th Cir. 2000). Because of the need to protect constitutional rights while also avoiding a chilling effect on the conduct of law enforcement personnel, qualified immunity balances "[t]he public interest in deterrence of unlawful conduct and in compensation of victims." Harlow, 457 U.S. at 819. "[W]hether an individual official protected by qualified immunity may be held personally liable for an alleged unlawful official action generally turns of the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.E.2d 523 (1987). It is not necessary that a court has specifically addressed the exact circumstances for the law to be "clearly established." Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992). "'Clearly established' in this context includes not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle invoked," Id., "so long as its illegality would have been evident to a reasonable officer based on existing case law." Rogers v. Pendleton, 249 F.3d 279,286 (4th Cir. 2001).

Assessing the application of qualified immunity involves a three pronged analysis. First a court must determine whether, "[t]aken in the light most favorable to the party asserting injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right." Clem v. Corbeau, 284 F.3d 543,549 (4th Cir. 2002)(citing Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 2156 150 L.Ed.2d 272 (2001). "If the answer is 'no' then the analysis ends; the plaintiff cannot prevail. If the answer is 'yes,' then 'the next, sequential step is to ask whether the right was clearly established' at the time of the events at issue." Id. This inquiry should be made considering the specific facts of the case at issue. Id. "[I]f it was not 'clear to a reasonable officer' that the conduct in which he

allegedly engaged 'was unlawful in the situation he confronted' – then the law affords immunity from suit.  Id.  In other words, qualified immunity protects an officer if the law was not clearly established or if, although clearly established, a reasonable officer under the circumstances could have failed to appreciate that his conduct would violate the clearly established law.  Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992). Officers are not protected by qualified immunity when they are "plainly incompetent or . . . knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

As argued by Defendant Powell, plaintiffs do not have a constitutional right to have another person arrested.  See De Shaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 199-200 (1989)(no right to police investigation); Sattler v. Johnson, 857 F.2d 224, 226-27 (4th Cir. 1988) (victim has no constitutional right to insist on a criminal prosecution.); Gomez v. Whitney, 757 F.2d 1005 (9th Cir. 1985)(no right to adequate investigation).  Allegations of negligence do not amount to a constitutional violation and negligence is not actionable under 42 U.S.C. §1983. Federal actions for damages against state actors pursuant to 42 U.S.C. § 1983 do not impose liability for violations of duties of care (such as those involved in negligence actions) arising under state law.  See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. at 200-03.  Therefore, plaintiffs' claims are without merit.

An employer or supervisor is not liable for the acts of their employees, absent an official policy or custom which results in illegal action.  See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982).  The employer or supervisor may only be held liable if the plaintiff can show that they had actual knowledge of a specific danger, but were deliberately indifferent to the plaintiff's rights despite their knowledge of this danger.  Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984).  Upon the

-19-

record before the court, there is insufficient evidence to show that either named governmental entity had an official policy or custom which violated plaintiffs' constitutional rights.  Therefore, the State of South Carolina and the County of Florence are entitled to summary judgment.

**Plaintiffs' Motion for Summary Judgment**

In their motion for summary judgment, plaintiff seeks summary judgment in favor of their claims under the Fourth Amendment and on state law claims.  For the reasons stated above, plaintiffs' motion for summary judgment in favor of their claims under §1983 for violation of their rights under the Fourth Amendment, or any other constitutional claims addressed herein, are without merit.

For the foregoing reasons, defendants' motions for summary judgment (Documents # 63 and # 73) should be granted and plaintiffs' motion for summary judgment (#116) should be denied.

Assuming plaintiffs' federal claims are dismissed by this court, this court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).  Therefore, plaintiffs' state law claims should be remanded to the Court of Common Pleas for The Twelfth Judicial Circuit, Florence, South Carolina.

Additionally, should the district judge agree with this recommendation, the outstanding motions should be deemed moot.[17]

August 2, 2006                                    s/Thomas E. Rogers, III
Florence, South Carolina                   Thomas E. Rogers, III
                                                        United States Magistrate Judge

**The parties' attention is directed to the important notice contained on the following page(s).**

_____

[17]  In the plaintiffs' return to the Vause's motion for summary judgment filed February 6, 2006, they argue that the motion is not ripe because a discovery motion (Document # 92) was pending.  The undersigned ruled on the discovery matter at a hearing held April 18, 2006. Additionally, the discovery deadline in this matter expired in July 2005.

-20-

**Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"**

**&**

**The Serious Consequences of a Failure to Do So**

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina 29503
